# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

**ARCH INSURANCE COMPANY**

       **Plaintiff**

vs.

**COOSA VALLEY FAIR ASSOCIATION, INC.; SAMANTHA HUDGINS, Individually and as parent and natural guardian of A.E., a minor; and CHRISTEN LANG, Individually and as parent and natural guardian of J.L., a minor,**

       **Defendants.**

**Civil Action File No.**

 

## ARCH INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Arch Insurance Company ("Arch") files this Complaint for Declaratory Judgement to determine the extent of coverage, including the obligations of defense and indemnity, owed for the claims asserted in an underlying lawsuit in the Superior Court of Floyd County, Georgia, captioned as *Samantha Hudgins, individually and as apparent and natural guardian of A.E., a minor; and Christen Lang, individually and as a parent and natural guardian of J.L., a minor*

*vs. Chia Guild of Arts and Crafts, Ltd.; and Coosa Valley Fair Association, Inc.*, CAFN: 22CV01485 (the "Underlying Suit").

Arch seeks a determination of its duties in the Underlying Suit and ask this Honorable Court for a declaration that it has no duty to defend or indemnify the Coosa Valley Fair Association, Inc. for the claims asserted in the Underlying Suit, showing the Court as follows:

## **Parties**

1.

Arch is a foreign insurer, organized under the laws of Missouri with its principal place of business located in New Jersey.

2.

The Coosa Valley Fair Association, Inc. ("Coosa Valley"), is a corporation organized under the laws of Georgia with a principal place of business in Rome, Georgia.

3.

Coosa Valley may be served at its Principal Office Address at 1400 Martin Luther King Jr. Boulevard Rome, GA 30161, via its registered agent, Joseph Shealy.

4.

At all times relevant hereto, Coosa Valley was in the business of owning, managing, and operating the Coosa Valley Fairgrounds in Floyd County, Georgia.

5.

Samantha Hudgins, as parent and natural guardian of A.E., a minor, is a citizen of Georgia pursuant to 28 U.S.C. § 1332(c)(2) because she and A.E. are citizens of Georgia.

6.

Christen Lang, as parent and natural guardian of J.L., a minor, is a citizen of Georgia pursuant to 28 U.S.C. § 1332(c)(2) because she and J.L. are citizens of Georgia.

## Jurisdiction and Venue

7.

There is complete diversity of citizenship between Arch, a citizen of Missouri, and the defendants, who are citizens of Georgia.

8.

The amount in controversy exceeds $75,000.

9.

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10.

The subject policies issued by Arch, Policy No. SNCGL0126104 (the "Primary Policy") and Policy No. SNFXS0056803 (the "Excess Policy"), were issued in and delivered at Coosa Valley's address at 1400 Martin Luther King Jr. Boulevard Rome, GA 30161, within the judicial district for the Rome Division of the Northern District of Georgia.

11.

Venue is proper in the Rome Division of the Northern District of Georgia, where one or more defendants reside, where the insurance policy was delivered, where the Underlying Suit is pending, and where the incident giving rise to the Underlying Suit occurred. 28 U.S.C. § 2201; 28 U.S.C. § 1391(b); L.R. 3.1.(B).

## Underlying Suit

12.

The Plaintiffs filed the Underlying Suit on September 19, 2022, alleging that their minor children contracted *E. coli* from "fecal matter containing *E. coli*" while invitees at the Chiaha Harvest Fair that was conducted on property owned by Coosa

4

Valley. The Complaint in the Underlying Suit (the "Underlying Complaint") is attached as **Exhibit A.**

13.

The Underlying Complaint alleges that minors A.E. and J.L. both contracted their illness from contact with "hay, ground, ground covering, food and objects contaminated with fecal matter containing *E. coli* O157:H7" while on the premises. Ex. A ¶¶ 32, 46.

14.

As for any liability alleged against Coosa Valley, both A.E. and J.L., for any liability alleged against Coosa Valley allege they suffered significant bodily injury as a result of *E. coli* infection from fecal matter containing *E. coli*, which fecal matter containing *E. coli* is asserted to be sourced from cow excrement remnants deposited in a livestock building during a prior event that is contended to have not been properly removed during the cleaning of the livestock building, which building was visited by both A.E. and J.L. while at the Chiaha Harvest Fair.

15.

The parent-Plaintiffs, Hudgins and Lang, bring no claims for property damage or bodily injury to themselves.

## Discovery and Testimony in the Underlying Suit

16.

Discovery has been ongoing in the Underlying Suit and has included, *inter alia*, the Depositions of Samantha Hudgins and Christine Lang.[1]

17.

During her deposition, Hudgins testified that A.E., a minor, did not eat any food while on the premises.

18.

During her deposition, Hudgins testified that A.E., a minor, was in the "kids area" of the livestock building where she picked up shavings and threw them in the air and that Huggins immediately then cleaned A.E.'s hands with "Bath and Body Works" hand sanitizer.

19.

During her deposition, Lang testified that J.L., a minor, used crayons in the "kids' area" inside the livestock building, where he was exposed to the "hay, ground, [and] ground covering."

---

[1] Because these two depositions concern matters involving minor children, and because the transcripts of these depositions have not been made part of the public record in the underlying lawsuit, ARCH has refrained from attaching portions of these deposition transcripts as exhibits with this Complaint.

20.

During her deposition, Lang testified the J.L., a minor, ate some cotton candy and maybe some funnel cake, but she cleaned his hands with "Purell" sanitizer before J.L. ate anything.

21.

There are no allegations, nor evidence, presented in the Underlying Suit, that any food (sold or brought to the festival) was sold or provided to the minor children which contained *E. coli*. The only alleged source of *E. coli* is the alleged fecal matter containing *E. coli* from remnant animal waste in the livestock buildings.

22.

There is no reliable indication in any pleading, testimony, or other evidence presented that A.E. and J.L were made ill due to *E. Coli* being on, or contained in, a good or product intended for bodily consumption.

### The Arch Policies and their Exclusions

23.

Arch issued the Primary Policy and Excess Policy to Coosa Valley both with a policy period of April 15, 2021 to April 15, 2022. True and accurate redacted copies of each Policy are attached respectively as **Exhibit B** and **Exhibit C**.

24.

The Arch Primary Policy is subject to an "Each Occurrence Limit" of $1.0 million and the Arch Excess Policy is subject to an "Each Occurrence" Limit of $1.0 million.

25.

Coverage A of the Primary Policy provides coverage for "bodily injury" occurring within the policy period to which the insurance applies only if the "bodily injury" is caused by an "occurrence."

26.

The Primary Policy defines "Bodily Injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

27.

The Primary Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28.

Coverage A of the Primary Policy provides that, other than for payment of sums the insured becomes legally obligated to pay because of damages of "bodily

injury" or "property damage" to which this insurance applies, "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B."

29.

The Arch Primary Policy's provisions entitled "Supplementary Payments – Coverage A and B" provides, in relevant part, that Arch will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend: . . . "e. [a]ll court costs taxed against the insured in the 'suit.' However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured."

30.

The Arch Primary Policy also contains the following exclusionary Endorsement:

> **FUNGI OR BACTERIA EXCLUSION**
>
> This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> **Fungi Or Bacteria**
>
> a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of

9

> whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.
>
> . . . .

31.

The Excess Policy is a follow-form policy, adopting the definitions, coverage provisions, and obligations contained within the "controlling underlying insurance," which in this case is the Primary Policy.

32.

The Excess Policy additionally contains the following exclusion:

> . . . .
>
> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

## **COUNT I: Applicability of the Fungi Or Bacteria Exclusion**

33.

The Underlying Complaint alleges that the bodily injuries suffered by Plaintiffs' minors A.E. and J.L. were caused by their exposure to fecal matter containing *E. coli* O157:H7.

34.

The Underlying Complaint alleges that the bodily injury suffered by Plaintiffs' minors A.E. and J.L. would not have occurred, in whole or in part, but for the alleged inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fecal matter containing *E. coli* O157:H7, on or within a building or structure, including its contents.

35.

Except for those bodily injuries claimed to be from the alleged discharge, inhalation of, ingestion of, contact with, exposure to, existence of, or presence of fecal matter containing *E. coli* O157:H7 on or within a building or structure, including its contents, no other claims for "bodily injury" or "property damage," as those terms are contemplated by the Policies, are present in the Underlying Suit.

36.

The testimony in the Underlying Suit and the true facts are that A.E. consumed no food or other good or product intended for bodily consumption while on the Coosa Valley property.

37.

The Fungi and Bacteria Exclusion is applicable barring coverage for the liability asserted against Coosa Valley for all damages because of bodily injury allegedly suffered by A.E. caused by fecal matter containing *E. coli* O157:H7.

38.

Based on the testimony in the Underlying Suit and the true facts, no exception to the Fungi and Bacteria Exclusion applies for the bodily injuries allegedly suffered by A.E. caused by fecal matter containing *E. coli* O157:H7.

39.

The testimony in the Underlying Suit and the true facts are that J.L. did not consume food that had fecal matter containing *E. coli* O157:H7 on it, or contained in it, at the time J.L. consumed any food intended for bodily consumption while on the Coosa Valley property.

40.

The Fungi and Bacteria Exclusion is applicable barring coverage for the liability asserted against Coosa Valley for all damages because of bodily injury allegedly suffered by J.L. caused by fecal matter containing *E. coli* O157:H7.

41.

Based on the testimony in the Underlying Suit and the true facts, no exception to the Fungi and Bacteria Exclusion applies for bodily injuries allegedly suffered by J.L. caused by fecal matter containing *E. coli* O157:H7.

42.

Accordingly, the Fungi and Bacteria Exclusion in the Primary Policy, which is incorporated into the following form Excess Policy, has full effect under Georgia law, and no coverage exist under either Policy for the liability alleged against Coosa Valley in the Underlying Suit for the injuries sustained by the Plaintiffs' minors A.E. and J.L. caused by fecal matter containing *E. coli* O157:H7.

### **COUNT II: In The Alternative, To The Extent Any Coverage Applies, Plaintiffs' Attorneys' Fees and Expenses Are Not Covered**

43.

Plaintiffs' claims of liability against Coosa Valley because of bodily injuries suffered by Plaintiffs' minors A.E. and J.L. caused by exposure to fecal matter

containing *E. coli* O157:H7 located in a building that previously contained animals and their waste products is barred from coverage by the Fungi and Bacteria Exclusion. However, in the event indemnity coverage is not barred by the Fungi and Bacteria Exclusion, then the Plaintiffs' claims for recovery of attorneys' fees and expenses, including under Count II, O.C.G.A. § 13-6-11 and in Plaintiffs' Prayer, do not constitute damages that the insured becomes legally obligated to pay because of "bodily injury", subject to coverage under Coverage A the Arch policies.

44.

Plaintiffs' claims for recovery of attorneys' fees and expenses, including under Count II, O.C.G.A. § 13-6-11 and in Plaintiffs' Prayer, are expressly not covered as supplementary payments as the "Supplementary Payments—Coverages A and B" subpart (e), provides that Supplementary Payments "do not include attorneys' fees or attorneys' expenses taxed against the insured."

45.

The Arch Excess Policy incorporates and follows form to the Arch Primary Policy and Plaintiffs' claims for recovery of attorneys' fees and expenses, including under Count II, O.C.G.A. § 13-6-11 and in Plaintiffs' Prayer, do not constitute "damages" within the meaning of "Ultimate Net Loss" for which any insured

becomes legally obligated to pay as "damages" by reason of settlements, judgments or binding arbitration.

46.

All of Plaintiffs' claims for recovery of their attorneys' fees and expenses against Coosa Valley are not subject to coverage under the Arch Primary and Excess Policies.

**COUNT III:      In The Alternative, To The Extent Any Coverage Applies, "Bodily Injury" To A.E. and J.L. Arise From A Single "Occurrence"**

47.

Plaintiffs' claims of liability against Coosa Valley because of bodily injuries suffered by Plaintiffs' minors A.E. and J.L. caused by exposure to fecal matter containing *E. coli* O157:H7 in a building that previously contained animals and their waste products is barred from coverage by the Fungi and Bacteria Exclusion. However, in the event indemnity coverage is not barred by the Fungi and Bacteria Exclusion, the "bodily injury" to A.E. and the "bodily injury" to J.L. were caused by their "continuous or repeated exposure to substantially the same general harmful conditions." Thus, for the liability claimed against Coosa Valley, based upon the "bodily injury" suffered jointly and/or singularly by A.E. and J.L., the maximum limit subject to potential coverage under the Arch Primary Policy is its "Each

Occurrence Limit" of $1.0 million and the maximum limit subject to potential coverage under the Arch Excess Policy is its "Each Occurrence Limit" of $1.0 million.

## PRAYER FOR RELIEF

1. Based on the Fungi and Bacteria Exclusion in the Arch Primary Policy, which is incorporated into the following form Excess Policy, and based on the laws of the state of Georgia, Arch request that this Honorable Court grant a declaration that Arch owes no duty of defense or indemnity to Coosa Vally for the claims asserted by the Plaintiffs in the Underlying Suit seeking damages or other relief for the bodily injuries suffered by A.E. and J.L. alleged to cause and/or caused by fecal matter containing *E. coli* O157:H7;

2. In the alternative, in the event the Arch Primary Policy and/or the Arch Excess Policy are found to provide any indemnity coverage for Coosa Valley for the claims of Plaintiffs, Arch request that this Honorable Court declare that all of Plaintiffs' claims for recovery of their attorneys' fees and expenses against Coosa Valley are not subject to coverage under the Arch Primary and Excess Policies; and

3. In the alternative, in the event the Arch Primary Policy and/or the Arch Excess Policy are found to provide any indemnity coverage for Coosa Valley for the

claims of Plaintiffs, Arch request that this Honorable Court declare that for the liability claimed against Coosa Valley, based upon the "bodily injury" suffered jointly and/or singularly by A.E. and J.L., the maximum limit subject to potential coverage under the Arch Primary Policy is its "Each Occurrence Limit" of $1.0 million and the maximum limit subject to potential coverage under the Arch Excess Policy is its "Each Occurrence Limit" of $1.0 million.

4. Arch requests such other and further relief as this Court may deem just and proper.

5. Arch requests trial by Jury.

Respectfully submitted this 20th day of February, 2024.

**HALL BOOTH SMITH, P.C.**

*/s/ C. Michael Johnson*

C. MICHAEL JOHNSON
Georgia Bar No. 392550
THOMAS K. WINGFIELD
Georgia Bar No. 770653
ADAM J. NORTH
Georgia Bar No. 269151

191 Peachtree Street N.E., Suite 2900
Atlanta, GA  30303-1775
Phone:  (404) 954-5000
Fax:     (404) 954-5020
MJohnson@hallboothsmith.com
TWingfield@hallboothsmith.com
ANorth@hallboothsmith.com

*Counsel for Plaintiff,
Arch Insurance Company*